## Venters v. Watts et al.

December 14, 1948.

Clark Pratt for appellant.

Dan T. Martin and Carl D. Perkins for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

On December 15, 1945, appellant, Wallace Venters, entered into a written contract with appellee, Elmine Watts, under the terms of which appellant sold to appellee all the merchantable timber standing on the 400 acre tract owned by appellant on Willard Branch of Carr's Creek in Knott County. Appellant was to fell the trees and saw the logs into lengths of 8 to 16 feet for which appellee was to pay $17.50 per thousand feet, log measure, at the place where they fell. Measurements were to be made of the logs twice a month and paid for as measured. Appellee was to have the privilege of locating a sawmill on the property mentioned to remain until the logs were sawed, after which he had a reasonable time to remove the mill. The location of the mill site was not fixed in the contract although the lawyer who drew the agreement urged that it be so fixed. The two principals agreed in his presence that this site would be fixed by mutual agreement at a later date. This

was never done and the failure to agree on this site resulted in the breach of the contract and this litigation which followed.

In January 1946, following the execution of the contract, appellant began to fell the trees, which he sawed into logs, and continued until about June at which time he had cut and sawed into logs 229,034 feet by his measurements. Appellee had not participated in the measurements but did not dispute the figures and paid to appellant $975.50 on the contract price. Appellee did not set up a mill or make any further effort to carry out the contract but instead sold and assigned his interest in the contract for $1000 to his brother-in-law, Mosey Johnson, also appellee herein, an experienced timber man. There was no written assignment but appellant was informed of it and apparently agreed to the sale and assignment of the contract to appellee Johnson. At this time Johnson paid to appellant $1000 on the cut timber, making a total of $1975.50 which he had received on the $4008.09 value of cut timber under the contract price.

Early in August, shortly after his purchase of the contract, appellee Johnson moved his mill onto the tract of land for the purpose of sawing the logs. A dispute arose as to the location of the mill site and, after four or five days spent in an effort to reach an agreement and without setting the mill, appellee Johnson moved it off the land of appellant. Shortly thereafter appellees brought this suit against appellant for breach of contract. In their petition they prayed for return of the $1975.50 which they claimed was advanced to appellant by them, for $695.50 damages for the cost of moving the mill machinery to the tract, for $3000, later amended to $15000 for loss of profits, all resulting from the alleged breach of the contract by appellant. In his answer and counterclaim, appellant denies the allegations of the petition, alleges breach of the contract by appellees and prays for recovery of $2032.59 on his counterclaim, this amount representing the difference between the value of the cut timber at the contract price and the sum of $1975.50 which appellees had paid thereon. On a trial of the issues involved, the jury brought in a verdict in favor of appellees in the sum of $1975.50 and appellant prosecutes this appeal from the judgment based on that verdict.

A number of grounds are urged for reversal of the judgment. It is first insisted that the court erred in overruling defendant's motion to transfer to equity. This is not a suit for rescission of a contract but a suit for its breach and for damages resulting from the alleged breach. The principal question involved was one of fact, that is, who was responsible for the breach of the contract. If appellant was responsible, as appellees alleged, then the question of damages resulting from that breach was for the jury to determine. We think the issues involved were not predominantly equitable and that the lower court did not err in refusing to transfer the case to the equity side of the docket.

It is next insisted that at the time of the alleged breach of the contract by appellant, appellees themselves were in default in the performance of the contract and had no legal right to terminate the contract and sue for a breach thereof. This contention is based on the fact that appellees did not measure and pay for the timber each two weeks as provided in the contract. We think the evidence shows this provision of the contract was not strictly lived up to by appellees. This was a direct breach of the contract for which appellant could have brought suit for rescission and damages. However, he did not do so but instead accepted a lump sum payment of $975.50 on account and later accepted a lump sum payment of $1000 on account, based on his measurements of timber cut. By accepting these payments at two different times during the first six months of operation and not insisting on a bi-weekly settlement in accordance with the terms of the contract, the terms of the contract were waived and appellant cannot now rely on this breach in defense of any breach which might have been subsequently committed by him. Furthermore th's question was covered in the instructions to the jury when in instruction No. 1, appellees' right to recover was predicated on the previous finding of the jury that "plaintiffs were not in default in the performance of their part of said contract by failing to measure and pay for said logs each two weeks, without consent of defendant." Therefore, the jury apparently found that appellees were not in default because of the consent or waiver by appellant.

Appellant next contends that he did not breach his

contract and appellees were not authorized under the evidence to terminate the contract and the verdict of the jury was not supported by the evidence and was flagrantly against the evidence. This is the main question involved in this case and on it the proof is highly conflicting as to where the fault lies for failure of the parties to agree upon a satisfactory site for location of the mill. Neither side is without some fault in the matter. Appellant was first in fault for his failure to make a full disclosure about his son's owning part of the land. His testimony was that he sold about 100 acres of this 400 acre tract to his son in 1942, but the jury probably discredited this testimony because he admitted that the deed to his son was not recorded until after appellee Johnson moved the mill onto the site which he wanted to use. This site was on the property included in the deed to the son and the son would not let the mill be placed on his property. Most of the timber that had been cut had been cut on this property, which the son now owned, and the site selected by Johnson was near this cut timber in poplar hollow. If some other site were selected, appellees contended it would necessitate loading the logs on trucks and hauling them to the site appellant wanted used. This would have been inconvenient and would have made the operation unprofitable, according to appellees. Other technical objections to sites offered by appellant were made by appellee Johnson which, no doubt, were understood by the jury familiar with logging and sawing problems. Appellee Johnson was not without some fault and, reading the testimony as a whole, it would appear that he was somewhat unreasonable in insisting on the one site in preference to others that appellant offered him. As to which party is to blame and other questions of fact developed in the evidence, those are questions for the jury to determine and we cannot say that its verdict is flagrantly against the evidence.

Finally appellant complains of the instructions given by the court. Appellant offered eight instructions which were refused and on his own motion the court gave seven instructions. These instructions, offered and given, are too long to copy and analyze in this opinion but we have carefully considered them and in our opin-

ion, they, taken together, fairly present the issues in-volved under the pleadings and proof in the case.

Finding no prejudicial errors, the judgment of the lower court may be and it is affirmed.